## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES RICHARD ELEY**                                       **CIVIL ACTION**

**VERSUS**                                                          **NO. 20-2232**

**DARREL VANNOY, WARDEN**                         **SECTION: "G"(5)**

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, James Richard Eley, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In July 2012, Eley was charged with aggravated rape of the four-year old victim, B.H. (DOB 9-10-07).[1]    On September 10, 2015, a jury found him guilty as charged.[2]    On September 28, 2015, his motions for post-verdict judgment of acquittal and for a new trial were denied, and he was sentenced to life

---

[1]  State Rec., Vol. 1 of 8, Grand Jury Indictment, St. Tammany Parish.

[2]  State Rec., Vol. 1 of 8, Trial Minute Entry, 9/10/2015.

imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[3] His motion to reconsider the sentence was denied.

On direct appeal, appointed counsel for Eley raised several assignments of error: (1) the trial court erred in admitting the Children's Advocacy Center (CAC) video into evidence, in violation of his right to confront and cross-examine the victim, who had no recall of the events by the time of trial; (2) his right to due process was violated when the prosecutor failed to disclose material and exculpatory information about the victim's inability to recall the events; and (3) his sentence was excessive.[4]   Eley filed a pro se supplemental brief raising the same first two counseled assignments of error and also an additional assignment of error that (4) the trial court abused its discretion by not including several responsive verdicts.[5]   On September 16, 2016, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[6]   On September 6, 2017, the Louisiana Supreme Court denied his application for writ of certiorari.[7]

On or about October 22, 2018, Eley submitted his application for post-conviction relief to the state district court.[8]   In that application, he raised two claims for relief:   (1)

---

[3]   State Rec., Vol. 1 of 8, Sentencing Minute Entry, 9/28/2015. *See* State Rec., Vol. 3 of 8, Transcript of Sentencing.

[4]   State Rec., Vol. 4 of 8, Louisiana First Circuit No. 15-KA-1925, Appellant Brief.

[5]   State Rec., Vol. 4 of 8, Pro Se Supplemental Brief.

[6]   *State v. Eley*, 2015-KA-1925 (La. App. 1 Cir. 9/16/16), 203 So.3d 462; State Rec., Vol. 4 of 8.

[7]   *State v. Eley*, 2016-KO-1844 (La. 2017), 224 So.3d 982; State Rec., Vol. 4 of 8.

[8]   State Rec., Vol. 6 of 8, Uniform Application for Post-Conviction Relief and

the State's evidence was not sufficient to convict him of aggravated rape and (2) he was subjected to an unconstitutional non-unanimous jury verdict for a charged capital offense. On February 26, 2019, the state district court denied his application for post-conviction relief.[9]    He filed a supervisory writ application with the Louisiana First Circuit.    On July 17, 2019, the court of appeal denied relief.[10]    Eley filed his related supervisory writ application with the Louisiana Supreme Court.    On July 24, 2020, the Louisiana Supreme Court denied relief.[11]

On or about August 10, 2020, Eley filed the instant federal application for habeas corpus relief.[12]    In that application, he raises five claims for federal relief:    (1) the State's evidence was not sufficient to convict him of aggravated rape; (2) the trial court erred in admitting the CAC video into evidence in violation of his right to cross-examine and confront the victim; (3) his right to due process and a fair trial was violated when the State withheld exculpatory evidence in violation of *Brady v. Maryland*; (4) the trial court abused its discretion by not including several responsive verdicts; and (5) he was subjected to an unconstitutional non-unanimous jury verdict for a charged capital offense.    The State concedes that the federal petition is timely and that the claims have been exhausted in the

---

Memorandum in Support.

[9]  State Rec., Vol. 6 of 8, State District Court Judgment and Reasons for Judgment, 2/26/2019.

[10]  State Rec., Vol. 8 of 8, *State v. Eley*, 2019-KW-0541, 2019 WL 3235988 (La. App. 1st Cir. 07/17/2019).

[11]  *State v. Eley*, 2019-KH-01512 (La. 7/24/2020), 299 So.3d 63; State Rec., Vol. 7 of 8.

[12]  Rec. Doc. 1, 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

state courts.[13]    Eley has filed a reply to the State's response.[14]

### Facts

On direct appeal, the Louisiana First Circuit briefly summarized the facts adduced at

trial:

> On the evening of April 20, 2012, a Friday, four-and-one-half-year-old B.H. and his mother were having a fish-fry in the backyard of their home on Alice Street in St. Tammany Parish. Christopher Burns, a friend of the family who lived next door, was also there. Sometime during the evening, the defendant had stopped by to visit, then left. B.H. and his mother did not personally know the defendant. B.H.'s mother had briefly met the defendant earlier that week. Burns had hired the defendant to work on his house (next door) that he was renovating, and had allowed the defendant to live in a trailer on his property several miles away.
>
> At some point during the evening, B.H.'s mother and Burns noticed that B.H. was not in the backyard. They looked in the house, but did not find him. They walked to the street and began yelling out B.H.'s name. While still in the street, B.H.'s mother and Burns saw the defendant and B.H. walk out the front door of Burns's house. B.H.'s mother grabbed B.H. and brought him to her backyard, while Burns confronted the defendant, wanting to know why he was alone with someone else's child. B.H.'s mother asked B.H. what happened when he was in the house with the defendant. B.H. told his mother that they were in the bathroom and the defendant pushed and slapped B.H.'s penis. B.H. also said that the defendant picked him up and put him on the toilet and kissed B.H.'s penis. B.H.'s mother put her finger out and told B.H. to pretend her finger was his penis and to show her what the defendant did. B.H. kissed the tip of his mother's finger, then put his mouth around her finger. Several days later, B.H. was taken to the Children's Advocacy Center (CAC) in Covington (aka Hope House), where he disclosed in an interview the same information he had revealed to his mother. In the interview, B.H. did not know the defendant's name, but referred to him as Chris's friend. At trial, about three and a half years after the incident, B.H. testified that he did not remember being interviewed. He also testified he did not remember living on Alice Street and that nothing happened to him when he was four years old.

---

[13]  Rec. Doc. 11.

[14]  Rec. Doc. 12.

The defendant did not testify at trial.[15]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court

---

[15]  *State v. Eley*, 203 So.3d at 466-67 (footnote omitted).

confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

6

## Analysis

A. *Sufficiency of the Evidence*

Eley asserts that the evidence presented by the State was not sufficient to convict him of aggravated rape. The claim was first raised and considered during post-conviction relief proceedings in the state courts. In denying relief, the district court found that the claim was not properly before the court pursuant to Louisiana Code of Criminal Procedure article 930.3. The Louisiana First Circuit denied relief without stated reasons. The Louisiana Supreme Court denied relief on grounds that Eley "fails to show any lower court error in denying relief."[16]

The *Jackson* standard requires a determination regarding whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d

---

[16] The last reasoned decision issued by the district court specified that "this is not a cognizable claim because sufficiency of the evidence is not one of the exclusive grounds for post-conviction relief enumerated in La. C.Cr.P. art. 930.3." The later orders by the courts of appeal presumably did not disregard that bar in denying relief, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), although the validity of the bar is questionable. *Esteve v. Cain*, Civ. Action 15-787, 2017 WL 4081902, at *6-7 (E.D. La. Sept. 12, 2017). In any event, the State does not argue for procedural default (Rec. Doc. 11, p. 8 n. 4), but rather, notes that the claim fails under *de novo* review.

556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "[17]    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

At the time of the offense, Louisiana Revised Statute § 14:42 defined aggravated rape as a rape committed "where the anal, oral, or vaginal sexual intercourse is deemed to be

---

[17]    Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the *Jackson* standard need be satisfied, even if state law would impose a more demanding standard of proof. *Foy v. Donnelly*, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992); *Higgins v. Cain*, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n. 38 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011); *Williams v. Cain*, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), *aff'd*, 408 F. App'x 817 (5th Cir. 2011); *Davis v. Cain*, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); *Wade v. Cain*, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), *aff'd*, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); *see also Coleman*, 566 U.S. at 655 ("Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

without lawful consent of the victim because ... the victim is under the age of thirteen years."

La. R.S. 14:42(A)(4). [18]     Oral sexual intercourse is defined, in pertinent part, as the

intentional engaging in the act of touching the anus or genitals of the victim by the offender

using the mouth or tongue of the offender.     La. R.S. 14:41(C)(1).

Eley does not debate whether the elements of aggravated rape were satisfied.

Rather, he appears to argue only that the State failed to prove he was the perpetrator.     He

alleges that he was simply a "convenient target" for the accusation, and that the evidence was

deficient because:

> (1) the DNA evidence recovered from the victim's penis revealed a profile from
> an unknown or unidentified person; (2) Eley's DNA profile was excluded from
> the DNA profiles developed; (3) the victim's testimony did not establish that
> he was sexually assaulted by Eley; and (4) the prosecution's witnesses, who
> testified that Eley was the person who performed oral sex on the victim,
> testified contrary to evidence which establishes, beyond a reasonable doubt,
> that someone else's DNA was recovered from under the victim's penis in the
> form of dried secretions.[19]

Eley's primary focus is the lack of DNA evidence and the victim's vague identification of the

person who raped him.     He argues that the evidence amply supported the defense theory

that he was not the perpetrator, considering the victim said it was "Chris' friend" who

sexually assaulted him,[20]  but Chris Burns did not refer to Eley as his friend.[21]     He also

maintains that the DNA results exonerated him.

---

[18]  The offense is now designated under current law as "first degree rape."

[19]  Rec. Doc. 3-1, p. 17.

[20]  State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), p. 674 (JoBeth Rickels,
forensic interviewer at Children's Advocacy Center).

[21]  Rec. Doc. 3-1, pp. 19-22.

Eley attempts to cast doubt on his identity as the perpetrator, citing the four-year-old victim's vague reference to "Chris' friend," which Eley clearly was not, based on Christopher Burns' testimony at trial to the contrary.[22]   Eley argues that Burns' unidentified "friend" was actually another man, who was also helping renovate Burns' house and was allowed to live in a trailer on some property Burns owned several miles away from his house. However, only Eley was present at the scene and alone with the victim the night the crime occurred.   The uncontroverted testimony of the victim's mother and Burns established that as they were calling the victim's name and searching for him, Eley walked out of Burns' house next door with the four-year old boy.[23]   He was located not far from the scene by deputies dispatched after the victim's mother called police to report the incident, and the victim's mother related what had occurred when the deputy returned to the house with Eley.[24]

By the time of trial, the victim was unable to recall the incident or the subsequent videotaped interview, which was shown to the jury over defense counsel's objection. However, the victim's mother recalled at trial what her son told her happened in the bathroom and how he demonstrated on her finger exactly what Eley did to him.[25]   In the videotaped interview conducted with JoBeth Rickels at the Children's Advocacy Center a few days after the incident, the victim said it was Chris' friend who did this to him and

---

[22]   State Rec., Vol. 2 of 8, Trial Transcript (September 9, 2015), pp. 445-46, 463.

[23]   State Rec., Vol. 2 of 8, Trial Transcript (September 9, 2015), pp. 450-52 (Burns); pp. 474-77 (victim B.H.'s mother).

[24]   State Rec., Vol. 2 of 8, Trial Transcript (September 9, 2015), pp. 429-30, 436.

[25]   State Rec., Vol. 2 of 8, Trial Transcript (September 9, 2015), pp. 478-79.

demonstrated a kiss on the penis using a diagram.[26]    The victim repeated similar details about the incident, saying the man kissed it, referring to his penis, when he was examined by Dr. Jamie Jackson at the Audrey Hepburn Care Center.[27]

During Eley's interview with Detective Scott Davis, which was admitted into evidence at trial, he stated that he was in the bathroom with the victim and acknowledged that his hand might have touched the victim's penis and his saliva might be present since he spit in the toilet.[28]    When asked why he used the toilet instead of the sink, Eley explained there were no functional sinks in the house.    However, at trial, Detective Davis contradicted Eley's statement, testifying that he found the sinks functional when he executed the search warrant at Burns' house several days after the incident.[29]    Burns also testified that all of the sinks in the bathrooms were working properly.[30]

Eley claims that the DNA evidence exonerates him because another person's DNA was recovered from underneath the victim's penis.    The State notes, and Eley's reply acknowledges, that he is mistaken.[31]    The mixture of two DNA profiles is actually reflected

---

[26]  State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), pp. 664-67.

[27]  State Rec., Vol. 3 of 8, Trial Transcript (September 9, 2015), p. 603 (Dr. Jamie Jackson).

[28]  State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), pp. 697, 725-27 (Closing Argument).    The recorded statement was played for the jury during Detective Davis' testimony, State Rec., Vol. 3 of 8, Trial Transcript (September 9, 2015), pp. 545-46.

[29]  State Rec., Vol. 3 of 8, Trial Transcript (September 9, 2015), pp. 554-55 (Detective Scott Davis).

[30]  State Rec., Vol. 2 of 8, Trial Transcript (September 9, 2015), p. 455.

[31]  Rec. Doc. 12, p. 1.

on the samples taken from the inside fly portion of the victim's shorts and outer flap of underwear.[32]    While Eley was "excluded as a donor" to the sample from the underside of the victim's penis, as well as samples from the clothing, forensic DNA analyst Tara Johnson explained that the terminology only meant that "if his DNA was there, it was not in the high enough amount that we could detect it on our instruments."[33]    Ms. Johnson also stated that in her expertise it was "very probable" that the individual who contributed the DNA mixture was a biological parent.[34]    The jury could have concluded based on the evidence that the scientific analysis did not conclusively rule out Eley as the perpetrator.

The jury in this case made entirely reasonable inferences about the evidence, including the DNA results, and wholly rejected Eley's defense theory that another person raped the victim.    Even with the arguably weak identification by the victim due to his age and attendant limitations, when coupled with Eley's statement to Detective Davis, the testimony regarding the victim's statements around the time of the rape, and the strong circumstantial evidence, the jury verdict was not irrational.    To the extent his sufficiency claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.    *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, Civ. Action No. 93-5340, 1994 WL

---

[32]  See Rec. Doc. 11-1, Scientific Analysis Report.

[33]  State Rec., Vol. 3 of 8, Trial Transcript (September 9, 2015), p. 520 (Tara Johnson).

[34]  State Rec., Vol. 3 of 8, Trial Transcript (September 9, 2015), pp. 523-25.

242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025, at *1 (E.D. La. July 2, 2012).

      In this case, there was sufficient evidence from which the jury could have reasonably found Eley guilty of aggravated rape.   When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.   Eley is not entitled to relief on this claim.

    B. *Admission of CAC Video/Confrontation*

      Eley asserts that the trial court improperly admitted the victim's Children's Advocacy Center video in violation of his right to cross-examine and confront the witness.   The claim was considered and rejected by the state courts on direct appeal.   In denying the claim, the Louisiana First Circuit reasoned:

> In his first assignment of error, the defendant argues the trial court erred in admitting into evidence B.H.'s CAC interview. Specifically, the defendant contends that because he was unable to effectively cross-examine B.H. at trial, B.H. was essentially "unavailable" to testify at trial.
>
> At the time of trial, B.H. was one day shy of his eighth birthday. He testified at trial. Following is the relevant testimony on direct examination:
>
> EXAMINATION BY [THE PROSECUTOR]
>
> Q. Let's try one more. If I told you I was wearing a green suit right now, would I be telling the truth or a lie?
>
> A. Telling a lie.
>
> Q. Why?
>
> A. Because you are not wearing one.
>
> Q. Because I'm not wearing a green suit?

A. Yeah, because you're wearing gray.

Q. A gray. Okay.

MR. ADAIR [prosecutor]: May I approach the witness, Your Honor?

THE COURT: Permission granted.

EXAMINATION BY [THE PROSECUTOR]:

Q. [B.H.], in just a second, I want you to look on—do you see that computer screen right there?

A. Uh-huh (affirmative response).

Q. All right. Ms. Elizabeth is putting something on the computer screen. Is that you on there—

A. Yes, sir.

Q. —when you were smaller?

A. Uh-huh (affirmative response).

Q. That's you on that TV screen?

A. Yes, sir.

Q. Do you remember talking to that lady, Ms. JoBeth?

A. No, sir.

Q. No. Do you remember anything that you and Ms. JoBeth talked about?

A. No, sir.

Q. And that's the truth?

A. (Nods head affirmatively.)

Q. Is that the truth?

A. (Nods head affirmatively.)

Q. I'm, sorry, I couldn't hear you, man?

A. Yes.

Q. Yes. Okay.

Following is the relevant testimony of B.H. on cross-examination:

Q. What is your nunu, what does that mean?

A. Huh?

Q. Who is your nunu? What does that, mean?

A. That's like your other family.

Q. Okay.

A. I don't remember their name, because I forgot it.

Q. And you said your cousin?

A. Yeah. (Inaudible.)

Q. Do you ever see your dad. Mark?

A. Huh?

Q. Do you ever see your dad?

A. (Shakes head negatively.)

Q. No. You were asked to look at a photograph of something on the TV screen there. Do you remember—

A. No, sir.

Q. —anything about that?

A. No, sir.

Q. Do you remember why you talked to that lady?

A. No, sir.

Q. Do you remember anything about what you talked to that lady about?

A. No, sir, because it's been for me a very, very, like a thousand years, because it's very old.

Q. How old are you today?

A. Seven.

Q. Did something happen to you when you were four?

A. (Shakes head negatively.) No, sir.

Q. Do you remember living on Alice Street, somewhere like that?

A. No, sir.

Q. I'm sorry, I can't hear you?

A. No, sir.

Q. Did someone do something to you when you were four?

A. No, sir.

Q. Do you know why you're here today?

A. Because I'm helping Mr. Jay.

Q. I'm sorry, I can't hear?

A. Because I'm helping Mr. Jay.

Q. Before you came here today, your mom told you to tell the truth, correct?

A. Yes, sir.

Q. You said that already. Do you remember the TV screen you just looked at? Do you remember that interview?

A. Well, I used to remember it last weekend on Wednesday.

Q. What do you mean? I'm sorry, could you explain what you mean?

A. Yesterday, weekend, yesterday weekend. I noticed that on

Wednesday, because Mr. Jay showed me it.

Q. Do you remember talking to that lady? Do you remember what you talked about in that screen you just saw, the picture?

A. No.

Q. Do you remember being asked any questions?

A. No, sir. I know that I was shown something, but I don't know what I was shown.

Q. And the questions that I have asked you, are you telling the truth today?

A. Yes, sir.

Mid-trial, following the testimony of B.H., the defendant filed a motion to exclude the CAC interview, which had not yet been played for the jury. The defendant argued that B.H.'s memory loss made him an unavailable witness. According to defense counsel, B.H. "was unable to provide any meaningful answers." The trial court denied the defendant's motion, finding in pertinent part:

> The witness did not refuse to answer anything, he was available for questioning, and I find that the language in these cases support the admission of the tape provided that all of the other guidelines in 15:440 are met. But on this basis I do not find that there is a basis to exclude the video tape, so your motion is denied.

The defendant argues in brief that he was unable to "effectively" cross-examine B.H. According to the defendant, "precedent suggests" that when La. R.S. 15:440.5 is "carefully complied with and the videotaped victim is subject to *effective cross-examination*, there is no violation of the defendant's constitutional rights." The defendant suggests that B.H.'s "inability/refusal" to answer questions regarding the alleged assault rendered him essentially unavailable at trial. According to the defendant, B.H. was not subject to effective cross-examination. Therefore, defendant's constitutional right to confront his accuser was violated. Accordingly, the defendant asserts the CAC interview should not have been allowed into evidence at trial.

The defendant cites in brief *State in Interest of R.C. (R.C. II)*, 514 So.2d 759 (La. App. 2nd Cir.), *writ denied*, 516 So.2d 128 (La. 1987), and states that in this case the second circuit "upheld the trial court's refusal to admit a videotaped interview of the victim when the victim was present for trial but refused to

testify about the offense." Pointing out that the victim in *R.C. II*, "was unwilling to proceed with any further testimony about the incident, either on direct or cross-examination," the defendant avers that the "second circuit upheld the trial court's refusal to admit the videotaped interview" in *R.C II* because the victim could not be effectively cross-examined by the defendant., *R.C. II*, 514 So.2d at 760.

*R.C. II*, as referred to by the defendant, did not make any findings about the unavailability of a witness; rather, that 1987 case addressed its earlier decision of *State in the interest of R.C. (R.C. I)*, 494 So.2d 1350 (La. App. 2nd Cir. 1986), which was the second circuit's treatment of the State's writ application, wherein the State argued in a case alleging aggravated rape of a five-year-old child that the trial court erred in finding the juvenile victim unavailable to testify even though she took the stand and answered some questions on direct and cross-examination. *R.C. II*, 514 So.2d at 760. The second circuit granted the State's writ, placed the matter on the regular docket, then recalled the writ and remanded the case. *R.C. I*, 494 So.2d at 1351. In this 1986 decision, the second circuit found the victim was not available for cross-examination. According to the second circuit: "Although she took the stand, answered general questions on direct and a few questions on cross, she refused to talk about, the alleged offense. Cross-examination [cannot] be effective when it is not permitted to cover the facts of the alleged offense." *R.C. I*, 494 So.2d at 1356. Accordingly, the second circuit agreed that the trial court correctly held inadmissible at trial the victim's videotaped interview of what the defendant had done to her. *Id.* There is a difference between refusing to testify (as was the case in *R.C. II*) and an inability to remember (as in the case under review).

We do not agree with our sister circuit's treatment of the law on the unavailability of a juvenile witness/victim and its effect on the admissibility *vel non* of a videotaped interview of the victim. Despite the law of the second circuit, we do not find the thirty-year-old case of *R.C. II*, which was decided prior to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to be persuasive authority on these issues. *Cf. State v. Guerra*, 36,347 (La. App. 2nd Cir. 12/18/02), 834 So.2d 1206, 1216–17, *writ denied*, 2003–0072 (La. 4/25/03), 842 So.2d 398.

The statutory guidelines of La. R.S. 15:440.1 *et seq.* provide for the admissibility of CAC videotapes at trial. Louisiana Revised Statutes 15:440.4 and 15:440.5 are designed to ensure the reliability of the videotaped oral statement of a child victim. Louisiana Revised Statutes 15:440.4(A) provides five requirements which must be satisfactorily proven before such a videotape can be considered competent evidence. Louisiana Revised Statutes 15:440.5(A) provides eight requirements, some of which overlap those in La. R.S. 15:440.4(A), for the videotape to be admissible. *State v. Ledet*, 96–0142 (La. App. 1st Cir. 11/8/96), 694 So.2d 336, 342, *writ denied*, 96–3029 (La.

9/19/97), 701 So.2d 163.

The applicable provision herein is La. R.S. 15:440.5(A)(8), which provides that a videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if the protected person is available to testify. Despite the defendant's assertion, there is nothing in the Constitution so restrictive as to suggest that only *effective* cross-examination would be tolerated under the law. In *State v. Kennedy*, 2005–1981 (La. 5/22/07), 957 So.2d 757, 775–78, *rev'd on other grounds*, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the defendant argued that the admission into evidence of a videotaped statement of the victim violated the Confrontation Clause because she was unavailable for cross-examination due to lack of memory. The *Kennedy* Court, 957 So.2d at 777, noted that under *Crawford* and *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970), when the declarant appears at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. The *Kennedy* Court, rejected the argument that the victim's poor memory rendered her unavailable for cross-examination despite her physical presence on the stand, noting that the Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. *Kennedy*, 957 So.2d at 777, *see State v. Graham*, 2013–1806 (La. App. 1st Cir. 7/3/14), 148 So.3d 601, 608, *rev'd on other grounds*, 2014–1801 (La. 10/14/15), 180 So.3d 271 (per curiam).

The law, thus, requires only that the victim be available at trial to testify. B.H. was available to testify and, in fact, testified at trial, subject to cross-examination. On cross-examination, B.H. did not refuse to testify, but only indicated that he did not remember being interviewed (in the CAC) setting about three-and-one-half years prior. When defense counsel asked B.H., "Did someone do something to you when you were four?" B.H. responded, "No, sir." This questioning arguably impeached the earlier statements of B.H. in his CAC interview and, as such, inured to the benefit of the defendant.

In any event, this court recently addressed this precise issue in *Graham*, wherein the four-year-old victim, R.B., provided a recorded statement that the defendant had touched her vagina. At trial, R.B., who was then nine years old, "had no idea why she was in court and did not recognize the defendant in court. She also did not remember what had occurred when she was four years old and did not remember giving a recorded statement." *Graham*, 148 So.3d at 605. During a recess following R.B.'s testimony, the defendant sought to exclude R.B.'s recorded statement, arguing that she was unavailable to testify because of her lack of memory of the incident. *Id*. at 607. The trial court overruled the objection, finding that under *Kennedy* and *Green*, "there was no confrontation clause violation in admitting a prior recorded statement of a

witness, where the witness was produced at trial, even when the witness had a complete lack of memory of the prior events." *Graham*, 148 So.3d at 608.

Finding no error in the trial court's ruling, we found the admission of the videotaped statement of the victim into evidence was proper and not violative of the defendant's right to confront his accuser. In particular, we opined:

> *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) [noted] ("[an opportunity for effective cross-examination] is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness'[s] bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, ...) the very fact that he has a bad memory."), and *Green*, 399 U.S. at 157–58, 90 S.Ct. at 1935 (wherein the Court reiterated that the primary object of the Confrontation Clause is to allow "personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of *compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.*")(emphasis added).

*Graham*, 148 So.3d at 608–09.

Based on *Owens* and *Crawford*, a declarant's appearance and subjection to cross-examination at trial are all that is necessary to satisfy the Confrontation Clause, even if the declarant suffers from memory loss. *State v. Davis*, 2013–237 (La. App. 5th Cir. 10/30/13), 128 So.3d 1162, 1168, *writ denied*, 2013–2751 (La. 5/23/14), 140 So.3d 723. Accordingly, the CAC videotape was properly admitted into evidence, and the trial court did not err in denying the defendant's mid-trial motion to exclude the victim's recorded forensic interview.

This assignment of error is without merit.[35]

The Louisiana Supreme Court denied relief without additional stated reasons.

To the extent Eley argues that the state trial court improperly admitted the CAC video into evidence under state law, that claim is not cognizable on federal habeas review.    A

---

[35] *Eley*, 203 So.3d at 467-71.

federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *accord Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).    Federal habeas review is limited to errors of constitutional dimension, which does not include the review of admissibility of evidence under state law.    *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).    Federal habeas courts only consider whether erroneous state-court evidentiary rulings may implicate due process and render the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of Cal.*, 314 U.S. 219, 236–37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir.1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.).

Here, Eley contends that the introduction of the victim's CAC video interview violated his rights under the Confrontation Clause.    The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."    U.S. Const. amend. VI.    In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not

appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."   A Confrontation Clause claim presents a mixed question of law and fact.   *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008). Therefore, this Court must defer to the state courts' decision rejecting the claim unless petitioner demonstrates that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).   Eley fails to show that the state-court decision to deny him relief on direct appeal was contrary to or involved an unreasonable application of *Crawford v. Washington*, 541 U.S. 36 (2004); *United States v. Owens*, 484 U.S. 554 (1988); and *California v. Green*, 399 U.S. 149 (1970).

Eley's confrontation argument is premised upon the victim's purported inability to "defend or explain his out-of-court statement."[36]   Essentially, he claims that he was denied effective cross-examination of the victim, who could recall nothing about the incident by the time he testified at trial.   The seven-year-old victim was able to identify himself on the video.   However, he did not remember any details about the interview, or the incident itself, that took place when he was four years old.   On cross-examination, when asked if something happened when he was four, he said no.

In this case, the victim was present and testified at trial subject to cross-examination. It is the quality of cross-examination about which Eley complains, arguing that the victim was essentially unavailable since he had no memory of the events; however, he cites no controlling federal authority that holds limited recall or memory loss demands a different

---

[36]   Rec. Doc. 3-1, p. 36.

analysis or entitles him to relief under the Confrontation Clause.    Although acknowledging

the potential for witnesses' memory loss implicating confrontation rights, the United States

Supreme Court has declined in past instances to find a violation under the Confrontation

Clause.

In *Owens*, the Supreme Court found the Confrontation Clause was not violated where

the victim's memory was impaired due to injury and he was unable to explain during cross-

examination the basis for his identification of the assailant in an interview with an FBI agent

that was admitted into evidence.    The Supreme Court explained its rationale in the context

of its earlier precedent, including the decision in *California v. Green*:

> The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." This has long been read as securing an adequate opportunity to cross-examine adverse witnesses. *See, e.g., Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895*); Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). This Court has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory, but in two cases has expressly left that possibility open.
>
> In *California v. Green*, 399 U.S. 149, 157–164, 90 S.Ct. 1930, 1934–38, 26 L.Ed.2d 489 (1970), we found no constitutional violation in the admission of testimony that had been given at a preliminary hearing, relying on (as one of two independent grounds) the proposition that the opportunity to cross-examine the witness at trial satisfied the Sixth Amendment's requirements. We declined, however, to decide the admissibility of the same witness' out-of-court statement to a police officer concerning events that at trial he was unable to recall. In remanding on this point, we noted that the state court had not considered, and the parties had not briefed, the possibility that the witness' memory loss so affected the petitioner's right to cross-examine as to violate the Confrontation Clause. *Id.*, at 168–169, 90 S.Ct., at 1940–41. Justice Harlan, in a scholarly concurrence, stated that he would have reached the issue of the out-of-court statement, and would have held that a witness' inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence." *Id.*, at 188, 90 S.Ct., at 1951.

In *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam), we determined that there was no Confrontation Clause violation when an expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it. We said:

> "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id*., at 21–22, 106 S.Ct., at 295.

Our opinion noted that a defendant seeking to discredit a forgetful expert witness is not without ammunition, since the jury may be persuaded that "his opinion is as unreliable as his memory." *Id*., at 19, 106 S.Ct., at 294. We distinguished, however, the unresolved issue in *Green* on the basis that that involved the introduction of an out-of-court statement. 474 U.S., at 18, 106 S.Ct., at 294. Justice STEVENS, concurring in the judgment, suggested that the question at hand was in fact quite close to the question left open in *Green*. 474 U.S., at 23–24, 106 S.Ct., at 296.

*Owens*, 484 U.S. at 557-59 (footnote omitted).    As the Supreme Court in *Owens* then

resolved:

> Here that question is squarely presented, and we agree with the answer suggested 18 years ago by Justice Harlan. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987), quoting *Fensterer, supra*, 474 U.S., at 20, 106 S.Ct., at 294 (emphasis added); *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Ohio v. Roberts*, 448 U.S. 56, 73, n. 12, 100 S.Ct. 2531, 2543, n. 12, 65 L.Ed.2d 597 (1980). As *Fensterer* demonstrates, that opportunity is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931–932 (J. Chadbourn rev. 1970)) the very fact that he has a bad memory. If the ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no

reason why it should not suffice when the witness' past belief is introduced and he is unable to recollect the reason for that past belief. In both cases the foundation for the belief (current or past) cannot effectively be elicited, but other means of impugning the belief are available. Indeed, if there is any difference in persuasive impact between the statement "I believe this to be the man who assaulted me, but can't remember why" and the statement "I don't know whether this is the man who assaulted me, but I told the police I believed so earlier," the former would seem, if anything, more damaging and hence give rise to a greater need for memory-testing, if that is to be considered essential to an opportunity for effective cross-examination. We conclude with respect to this latter example, as we did in *Fensterer* with respect to the former, that it is not. The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons....

*Owens*, 484 U.S. at 559-60.

Later, in *Crawford*, the Supreme Court neither overruled nor called into question the decisions discussed above, but rather, reiterated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements...[]. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n. 9 (citations omitted). Unlike the instant case, *Crawford* involved the admissibility under the Confrontation Clause of recorded testimonial statements of a person who did not testify at the trial.

Eley can point to no clearly established Supreme Court law in support of his position that the admission of the CAC video violated his right to confront the victim because the victim had no memory of the incident. Numerous federal courts of appeal and district courts have grappled with the issue on occasion and denied relief. *See, e.g., Cookson v. Schwartz*, 556 F.3d 647, 652 (7th Cir. 2009) (holding that the introduction at trial of the victim's out-of-court statements did not violate the Confrontation Clause despite her

inability to recall making them); *Yanez v. Minnesota*, 562 F.3d 958, 962-65 (8th Cir. 2009) (no confrontation violation even though the victim could not recall at trial the details of her prior statements or the incidents that led to the statements, but the defendant had an opportunity on cross-examination to remind the jury of the victim's inability to recall the abuse); *United States v. Kappell*, 418 F.3d 550, 554-56 (6th Cir. 2005) (no confrontation violation by introduction of statements to therapist by two child victims about sexual abuse, even though children were unresponsive or inarticulate at some points during their trial testimony); *Muth v. Gomez*, Civ. Action 16-5601, 2020 WL 1027860, at *9-11 (N.D. Ill. March 3, 2020) (admission of victim's videotaped interview did not violate Confrontation Clause when victim testified at trial even though she was unable to recall abuse or circumstances surrounding the abuse); *Zambrano v. Gipson*, Civ. Action 15-01794, 2016 WL 3033693, at *12 (C.D. Cal. Apr. 19, 2016) (no confrontation violation by admission of videotape of victim's out-of-court interview where victim testified at trial but was unable to remember interview or instances of molestation), *adopted* 2016 WL 3030465 (C.D. Cal. May 26, 2016); *Gore v. Lagano*, Civ. Action 11-3008, 2014 WL 2094132, at *3-4 (D. New Jersey May 20, 2014) (no confrontation violation by introduction of statements and videotaped interview of victim who testified at trial but had limited recall of the sexual assault).    The United States Supreme Court has thus far declined to revisit the matter.    *See People v. Tapia*, at 33 N.Y.3d 257, 100 N.Y.S.3d 660, 124 N.E.3d 210 (2019), *cert. denied* 140 S.Ct. 643 (2019) (rejecting defendant's Sixth Amendment argument related to admission of grand jury testimony, that even though police officer testified at trial, his memory failure rendered him unavailable for the purpose of cross-examination); *State v. White*, 2017-1256 (La. App. 1st Cir. 2018), 243 So.3d 12, *writ denied* 261 So.3d 763(La. 2019), *cert denied* 140 S.Ct. 647 (2019).

In *Yanez*, upon thoroughly reviewing Supreme Court precedent, the Eighth Circuit noted that "[a]t a minimum, whether there may ever be an instance in which memory loss can inhibit cross-examination to such a degree as to violate the Constitution is still an 'open question.'   Thus, the position that Yanez advocates is not 'clearly established' for habeas purposes."   *Yanez*, 562 F.3d at 964 (citation omitted).    At best, the issue currently remains unsettled and cannot serve as the basis for habeas relief on Eley's confrontation claim under the AEDPA.

The state-court decision in this case was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.    Eley is not entitled to federal habeas relief on this claim.

### C.  *Due Process/Brady Claim*

Eley claims that he was denied due process and a fundamentally fair trial because the State withheld material, exculpatory evidence that the victim had no memory of the events. The claim was considered by the state courts on direct appeal.    In denying the claim, the court of appeal reasoned:

> In his second assignment of error, the defendant argues his right to due process was violated by the admission of the CAC interview. Specifically, the defendant contends the State violated *Brady* when it did not disclose prior to trial that B.H. "had no recollection of the events."
>
> At mid-trial, when the defendant moved to exclude the CAC interview, he also made a motion, in the alternative, for a mistrial based on a *Brady* violation. At issue were the following remarks made by the prosecutor, during his opening statement:
>
>> Now [B.H.], eight-year-old [B.H.], excuse me, eight years old tomorrow, [B.H.] is going to be here, and you will have the opportunity to hear from him. Now, this has been three and a half years to get to this point. At four years old, he was just young enough to not remember. And after three and a half years, eight-year-old

> [B.H]'s memory is failing. Eight-year-old [B.H.] doesn't recall much
> about April 20 of 2012. Eight-year-old [B.H.] will be here, but what
> eight-year-old [B.H.] may not tell you four-year-old [B.H.] will, tell you
> again, and again, and again.

Defense counsel argued in his motion that this information that B.H. would
testify that he did not remember what happened to him should have been
turned over to the defense prior to trial. According to defense counsel, such
information was "an inconsistent statement" discoverable through *Brady*.
Defense counsel further stated that "A witness not remembering anything
regarding the events is exculpatory, and we didn't find out about that until the
State's opening statement."

The prosecutor responded in pertinent part to the alleged *Brady* violation as
follows:

> What I can tell the Court is a witness not remembering an event,
> particularly a seven-year-old witness not remembering an event
> three-and-a-half years ago, is not an inconsistent statement or an
> exculpatory statement that would trigger a *Brady* disclosure. Had he
> indicated to the State in the affirmative that, nothing had happened at
> any point, I would agree with Mr. Carrington. That I would have had
> to, and certainly would have, disclosed over to defense as an
> exculpatory statement for the purposes of fulfilling my *Brady*
> obligation.
>
> On the witness stand he indicated that he did not remember. Not
> remembering something is not an inconsistent statement triggering
> *Brady*. It's in effect a memory loss or a truthful—certainly a truthful
> answer of not recalling an event or events in this case that are alleged
> to have occurred over 40 months ago.
>
> Under cross-examination is the first time that [B.H.] indicated in the
> negative, albeit it's a vaguely worded question, but in the negative that
> nothing happened or he said "No" to the question, "Did anything
> happen when you were four years old?"
>
> Had he indicated that to me at any time with me prior meeting with
> him, I assure you they would have been the first to know. But this—
> what the allegation in this—of this alleging that I committed or the
> State through me had committed a *Brady* violation is untenable and
> inapplicable. Any indication that Mr.—that [B.H.] did not remember is
> not exculpatory, is not inconsistent on its face and does not trigger the
> requirements and my responsibilities under *Brady*.

In denying the mistrial, the trial court stated:

> Okay. The Motion For Mistrial is denied. The State has indicated that it did not have any indication prior to the time that the witness testified under cross-examination that there would be any denial of any earlier event. And without any further support, I have to agree with Mr. Adair's argument that a lack of memory is not an inconsistent statement, and therefore would not trigger a *Brady* violation. Your Motion For Mistrial is denied.

It is well settled that the State has an affirmative duty to disclose exculpatory evidence favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 86–87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). But in order to prove a *Brady* violation, the defendant must establish, *inter alia*, that the evidence in question was, in fact, exculpatory or impeaching. *State v. Garrick*, 2003–0137 (La. 4/14/04), 870 So.2d 990, 993 (per curiam). Disclosure of exculpatory evidence should be made in time to allow a defendant to make effective use of such information in the presentation of his case. *State v. Prudholm*, 446 So.2d 729, 738 (La. 1984). However, even where disclosure is made during trial, it will be considered timely if the defendant is not prejudiced. *State v. Huls*, 95–0541 (La. App. 1st Cir. 5/29/96), 676 So.2d 160, 170, *writ denied*, 96–1734 (La. 1/6/97), 685 So.2d 126. In order to be entitled to a reversal for failure to timely provide exculpatory information, the defendant must show that he was prejudiced. Discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant. *Garrick*, 870 So.2d at 993.

A discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. *Garrick*, 870 So.2d at 993. While late disclosure, as well as nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense "must be evaluated in the context of the entire record." *State v. Kemp*, 2000–2228 (La. 10/15/02), 828 So.2d 540, 545 (per curiam).

We do not find the prosecutor's remark in his opening statement that B.H. does not recall much about the incident to be exculpatory. That is, B.H.'s alleged failing memory, or his not remembering having participated in a CAC interview when he was four-and-one-half years old, did not tend to establish the defendant's innocence.

Arguably, the prosecutor's knowledge that B.H.'s memory was failing was evidence with impeachment value, and may have constituted a discovery violation. The ostensible discovery violation, however, did not result in actual

prejudice to the defendant and, as such, there were not grounds for reversal. *See Garrick*, 870 So.2d at 993. The disclosure of B.H.'s potential memory loss was made before the first witness at trial was called. More importantly, B.H. was called to the stand to testify, and defense counsel was afforded the opportunity to vigorously cross-examine B.H. about what he remembered. *Cf. State v. Barker*, 628 So.2d 168, 176 (La. App. 2nd Cir. 1993), *writ denied*, 93–3194(La. 3/25/94), 635 So.2d 236. As noted, when B.H. testified on cross that no one had done anything to him when he was four years old, defense counsel, in effect, impeached B.H. Under these circumstances, we do not see how the defendant was in any way prejudiced by learning about B.H.'s possible memory loss during opening statements. *See Huls*, 676 So.2d at 170.

Moreover, there was no constitutional error because the prosecutor's remarks in his opening statement about the fact that B.H.'s "memory is failing" did not constitute material evidence. *See State v. Marshall*, 94–0461 (La. 9/5/95), 660 So.2d 819, 825–27. Favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. *See State v. Smith*, 95–1826 (La. App. 1st Cir. 9/27/96), 681 So.2d 980, 992, *writ denied*, 96–2568 (La. 3/27/97), 692 So.2d 390.

*Brady* and its progeny do not establish a general rule of discoverability. A prosecutor does not breach his constitutional duty to disclose favorable evidence unless the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense. *State v. Sparks*, 88–0017 (La. 5/11/11), 68 So.3d 435, 486, *cert. denied sub nom*, ––– U.S. ––––, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).

At trial, defense counsel, through cross-examination of B.H., exploited his memory loss and potentially impeached him. Moreover, defense counsel used this very issue to advance his reasonable doubt claim in closing argument:

> And, of course, as you remember in Voir Dire we talked about reasonable doubt based on reason and common sense? What if maybe he did it? Possibly did it? Maybe he didn't do it? Remember I asked each one of you that question?
>
> The State is asking you to find James Eley guilty on this—based on the testimony of a child who came to court and said not only did he not

remember making that taped statement, but also he did not—nothing happened to him and he didn't, remember anything happening to him.

Accordingly, the jury was exposed to this evidence and was free to consider it during deliberations. *See State v. Woolridge*, 555 So.2d 1385, 1389 (La. App. 4th Cir. 1989), *writ denied*, 561 So.2d 113 (La. 1990); *State v. Dozier*, 553 So.2d 931, 932–33 (La. App. 4th Cir. 1989), *writ denied,* 558 So.2d 567 (La. 1990).

Based on the foregoing, we find the defendant has failed to show that he was prejudiced in any way or that, the proceedings somehow were rendered fundamentally unfair. *See State v. Pitre*, 2004–0545 (La. App. 1st Cir. 12/17/04), 901 So.2d 428, 441–42, *writ denied*, 2005–0397 (La. 5/13/05), 902 So.2d 1018. Had such evidence of B.H.'s memory loss been disclosed prior to trial instead of at the beginning of trial, we are convinced that the result of the proceeding would not have been different. *See Bagley*, 473 U.S. at 682, 685, 105 S.Ct. at 3383, 3385.

The defendant has not established a viable *Brady* claim and, as such, this assignment of error is without merit.[37]

The Louisiana Supreme Court denied relief without additional stated reasons.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* disclosure requirement applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence. *See United States v. Dillman*, 15 F.3d 384, 390 (5th Cir. 1994) ("grand jury witness' statement—to the effect that she did not remember the meeting—is neutral, not exculpatory or impeaching in nature.") "To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the

---

[37] *Eley*, 203 So.3d at 471-74.

evidence was material."    *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016).

Because this claim was denied on the merits in state court, this Court's role is limited to

deciding "whether the state court's *Brady* determination resulted in a decision that [was]

contrary to, or involved an unreasonable application of, clearly established federal law."

*Dickson v. Quarterman*, 462 F.3d 470, 477-78 (5th Cir. 2006).

In arguing against the defense's motion for a mistrial, the prosecution made a

distinction, with which the trial court agreed, between a general lack of recall versus an

affirmative statement made by a victim pretrial denying that the incident occurred.[38]    In

denying the motion, the trial court found that the lack of memory did not trigger any

disclosure requirement under *Brady*.    On direct appeal, the Louisiana First Circuit

reasoned that the victim's failing memory at almost eight years old about an incident and

interview that happened when he was four years old was not exculpatory evidence.    In this

case, the State was only aware that the young victim, years later, had limited recall of the

events.    However, a victim's failing memory years after an event arguably falls within the

category of neutral evidence, rather than exculpatory, and, as such, any purported

nondisclosure did not violate the *Brady* rule.    *See Dillman*, 15 F.3d at 390; *see also United

States v. Rhodes*, 569 F.2d 384, 388 (5th Cir.), *cert. denied*, 439 U.S. 844, 99 S.Ct. 138, 58

L.Ed.2d 143 (1978) (holding prosecutor had no *Brady* duty to disclose that a certain witness

could not positively identify the defendant).

Moreover, regardless of the nature of the evidence at issue, the defense was made

---

[38]    State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), pp. 649-50.

aware of the victim's memory issues at the start of trial.[39]    Thus, no information was

withheld in violation of *Brady*.    As Eley notes, the prosecution discussed the victim's

inability to recall events and his failing memory in opening remarks.[40]    The defense had

ample time to use the information to question the victim at trial and explore all aspects

surrounding his memory loss.    Importantly, *Brady* claims deal with " 'the discovery of

evidence *after* trial of information which had been known to the prosecution but unknown

to the defense.' "    *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *United

States v. Agurs*, 427 U.S. 97, 103 (1976)) (emphasis added).    Here, the defense had adequate

time to prepare for questioning a young victim who likely would have difficulty recalling

events surrounding the rape that occurred when he was four years old, and the defense ably

used the information highlighted at the start of trial to the defense's advantage during cross-

examination of the victim and in closing argument.    "[W]hen information is fully available

to a defendant at the time of trial ... the defendant has no *Brady* claim."    *United States v.

Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *see also Smith v. Travis*, Civ. Action No. 08-4627,

2009 WL 1704335, at *10 (E.D. La. June 16, 2009) ("Where, as here, the evidence at issue

came to light during trial in sufficient time for defense counsel to put it to effective use, it was

---

[39]    The appellate court commented that the prosecutor's action might have constituted a discovery violation. *Eley*, 203 So.3d at 473. However, a discovery violation, even if one occurred, is immaterial in this federal proceeding. There is no general federal constitutional right to discovery in a criminal case, and, therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable on federal habeas review. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Lande v. Cooper*, Civ. Action No. 11-3130, 2013 WL 5781691, at *16 (E.D. La. Oct. 25, 2013); *Smith v. Travis*, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).

[40]    Rec. Doc. 3-1, p. 43.

not 'suppressed' in violation of *Brady* and its progeny."). The victim's lack of recall was known and disclosed at the time of trial and defense counsel was able to cross-examine the victim and explore at trial his inability to remember the interview or any details surrounding the rape. Defense counsel was aware of the information and was able to impeach the victim, to the extent possible, during trial.

Eley has not shown that the state courts' denial of relief was contrary to or an unreasonable application of clearly established Supreme Court precedent. He is not entitled to relief on this claim.

### D. *Responsive Verdicts*

Eley claims that he was denied due process because the trial court did not include the responsive verdicts of forcible rape, attempted forcible rape, simple rape and attempted simple rape as provided under state law. Eley raised the claim in a pro se supplemental brief on direct appeal. In denying the claim, the court of appeal explained:

> In his third pro se assignment of error, the defendant argues the trial court abused its discretion in not including several responsive verdicts for the jury to consider. Specifically, the defendant contends that during the jury charges, the trial court lacked the authority to remove from the jury's consideration the responsive verdicts of forcible rape, attempted forcible rape, simple rape, and attempted simple rape.

> Louisiana Code of Criminal Procedure article 814(A)(8.1) provides the following responsive verdicts for aggravated (now, first degree) rape of a child under the age of thirteen: Guilty; Guilty of attempted aggravated or first degree rape; Guilty of forcible or second degree rape; Guilty of attempted forcible or second degree rape; Guilty of simple or third degree rape; Guilty of attempted simple or third degree rape; Guilty of sexual battery; Guilty of molestation of a juvenile or a person with a physical or mental disability; Guilty of attempted molestation of a juvenile or a person with a physical or mental disability; Guilty of indecent behavior with a juvenile; Guilty of attempted indecent behavior with a juvenile; Not guilty.

> La. R.S. 14:42.1 provided in pertinent part in 2012:

A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.

La. R.S. 14:43 provided in pertinent part in 2012:

A. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:

(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

(2) When the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and the offender knew or should have known of the victim's incapacity.

The attempt of forcible rape and simple rape involve the same elements of these crimes except that, despite a defendant having the specific intent to commit one of these crimes, he did or omitted an act for the purpose of and tending directly toward the accomplishment of his object. *See* La. R.S. 14:27(A).

Defense counsel never objected to forcible rape and simple rape (and the attempts of each) not being included in the jury instructions. Following closing arguments, what defense counsel actually objected to was the inclusion in the jury charges of molestation of a juvenile and indecent behavior with a juvenile (and the attempts of each of these crimes). The trial court overruled this objection. We nevertheless address the trial court's exclusion of forcible rape and simple rape from the jury instructions because the defendant also argues

in his pro se brief that, if defense counsel did not object at trial to preserve the issue for appellate review, then it constituted ineffective assistant [sic] of counsel.

We find the trial court did not err in its jury charges on responsive verdicts. When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under La. Code Crim. P. arts. 814 or 815 (responsive verdicts), the court shall charge the jury as to the law applicable to each offense. See La. Code Crim. P. art. 803. While a trial court must charge the jury of the law applicable to lesser included offenses under La. Code Crim. P. art. 803, the charges must be pertinent and there must be evidence which would support a conviction of the lesser offenses. *See State v. Henry*, 449 So.2d 486, 488 (La. 1984). Louisiana Code of Criminal Procedure article 803 can reasonably be interpreted as requiring only those charges of which the accused can be found guilty under the indictment and the evidence. *Id.* at 489.

At the time the crime was committed, the defendant was thirty years old and B.H. was four years old. Accordingly, La. Code Crim. art. 814(A)(8.1), which provided for the responsive verdicts of aggravated rape of a child under the age of thirteen, was the proper subparagraph with which to inform the jury. Further, the trial court correctly included in its jury instructions the crimes of molestation of a juvenile and indecent behavior with a juvenile (and the attempts of each of these crimes) because these crimes "fit" the facts; that is, they were supported by the evidence. According to testimonial evidence, the defendant led B.H. away from his house. The defendant took B.H. into the bathroom of a house under renovation he (the defendant) was working on. The defendant sat B.H. on top of the toilet and, despite B.H.'s protestations, the defendant touched B.H.'s penis and put B.H.'s penis in his mouth. These acts easily fall within the definitions of molestation of a juvenile and indecent behavior with a juvenile. Louisiana Revised Statute 14:81.2(A)(1) provides in pertinent part:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.

La. R.S. 14:81 provides in pertinent part:

> A. Indecent behavior with juveniles is the commission of any of the

following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.

By contrast, neither forcible rape nor simple rape was supported by the evidence. Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in La. Code Crim. P. art. 814(A) if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense. *See* La. Code Crim. P. art. 814(C); *State v. Richard*, 39,705 (La. App. 2nd Cir. 5/11/05), 902 So.2d 1271, 1274–76, *writ denied*, 2005–1713 (La. 2/10/06), 924 So.2d 161. Regarding forcible rape, there was no evidence adduced at trial that the defendant used force or threats of physical violence, or that B.H. was incapable of resisting or understanding the act because of a stupor or abnormal condition of the mind produced by narcotics. *See* La. R.S. 14:42.1(A)(1) & (2). Similarly, regarding simple rape, there was no evidence adduced at trial that B.H. was incapable of resisting or understanding the act because of a stupor or abnormal condition of the mind produced by an intoxicating agent; or that B.H. was incapable of understanding the nature of the act because unsoundness of mind. *See* La. R.S. 14:43(A)(1) & (2); *State v. Taylor*, 34,096 (La. App. 2nd Cir. 12/15/00), 774 So.2d 379, 386–87, *writ denied*, 2001–0312 (La. 12/14/01), 803 So.2d 984 (finding that in prosecution for aggravated rape, the trial court properly excluded responsive verdicts of simple rape and attempted simple rape because evidence did not reasonably support such verdicts, given that defendant's contention the jury could infer the victim was intoxicated because she went to a nightclub to dance was undermined by his own testimony wherein he never suggested the victim was intoxicated or incapacitated in any way, and by victim's testimony that she never drank alcohol). *See also State v. Papillion*, 2010–1317 (La. App. 3rd Cir. 5/4/11), 63 So.3d 414, 433–35, *writ denied*, 2011–1149 (La. 11/18/11), 75 So.3d 447.

Accordingly, the trial court did not err in refusing to include in its jury instructions the responsive verdicts of forcible rape and simple rape (and the attempts of each of these crimes). Because these verdicts were not proper responsive verdicts, any lack of objection by defense counsel regarding this issue did not constitute ineffective assistance of counsel.

This pro se assignment of error is without merit.[41]

---

[41]   *Eley*, 203 So.3d at 476-79 (footnotes omitted).

The Louisiana Supreme Court denied relief without additional stated reasons.

Whether or not an offense should be included as a lesser included offense for jury instruction purposes is generally a question of state law.    *Ortega v. Stephens*, 784 F.3d 250, 253 n. 3 (5th Cir. 2015).    A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).    The fact that a state court's jury instruction is allegedly incorrect under state law is not a basis for federal habeas relief.    *Estelle*, 502 U.S. at 71-72*; see Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal relief.")

Additionally, Eley cites no controlling federal law that requires a state court to give an instruction on a lesser included offense in a non-capital case as a matter of a due process. *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988) (citing *Alexander*, 775 F.2d at 595) (finding no federal habeas issue arising from failure to include a statutorily allowed responsive verdict); *Easter v. Estelle*, 609 F.2d 756, 758 (5th Cir. 1980); *see also Bauman v. River Correction Center*, Civ. Action 19-0423, 2020 WL 1695148, at *6-7 (E.D. La. March 2, 2020), *adopted* 2020 WL 1689822 (E.D. La. Apr. 7, 2020).    For these reasons alone, Eley's claim should be denied as meritless.    However, even liberally construed under a due-process analysis, Eley has failed to establish any error by the state trial court which rendered the state court proceedings fundamentally unfair.

Despite the exclusive statutory list of responsive verdicts provided for the offense of

aggravated rape of a child under 13 years of age, at the time relevant to this offense under Louisiana Code of Criminal Procedure article 814(A)(8.1)), Louisiana law also provides that a trial court, on its own motion or on motion of either party, "*shall exclude* a responsive verdict" when "the evidence, viewed in the light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense."    La. Code Crim. P. art. 814(C) (emphasis added).    Thus, if there is no evidence reasonably supporting a potential verdict, then such a verdict should be excluded by the court as a possible responsive verdict. *See El-Amin v. Cain*, Civ. Action 15-1425, 2016 WL 3742175, at *7-8 (E.D. La. July 13, 2016) (citing *State v. Taylor*, 34, 096 (La. App. 2d Cir. 2000), 774 So.2d 379, 386-87, *writ denied*, 803 So.2d 984 (La. 2001)).    Notably, defense counsel did not seek the inclusion, or object to these responsive verdicts being excluded, based on the evidence presented.[42]    Here, as thoroughly explained by the court of appeal, there was no reason to include responsive verdicts of forcible or simple rape or the attempts for those offenses because there was absolutely no evidence adduced at trial to support them.    The responsive verdicts provided to the jury in this case included attempted aggravated rape, sexual battery, molestation of a juvenile, attempted molestation of a juvenile, indecent behavior with a juvenile, and attempted indecent behavior with a juvenile.[43]    The responsive verdicts provided by the trial court accurately reflected the relevant law and evidence and provided the only framework appropriate for jury consideration in this case.    *Clark v. Maggio*, 737 F.2d 471,

---

[42]    State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), pp. 687-91.

[43]    State Rec., Vol. 1 of 8, Jury Instructions; State Rec. Vol. 3 of 8, Trial Transcript (September 10, 2015), p. 751.

474 (5th Cir. 1984).   The state courts' decision denying this claim was not contrary to, or an unreasonable application of, United States Supreme Court precedent.   Eley is not entitled to relief on this claim.

E.   *Unanimous Jury Verdict*

In his last claim, Eley asserts:

La. R.S. 14:42(D)(2)(b) is unconstitutional because it violates Article I, §§ 2, 3, and 17(A) of the Louisiana Constitution of 1974, La. C.Cr.P. art. 782, and the Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution where it removes the procedural safeguards governing crimes considered serious enough to carry the death penalty and allows the State to deprive a defendant of his right to a unanimous jury verdict in a charged capital case.[44]

As he did unsuccessfully in the state courts during post-conviction proceedings, Eley argues for a fictitious "capital classification" to provide him procedural protections, such as unanimous jury verdicts, as if this were a capital case, even though admittedly the death penalty provision for aggravated rape of a child was long ago held unconstitutional and Eley never faced the death penalty.[45]   He relies on Louisiana jurisprudence, namely *State v. Lott*, 325 So.2d 576 (La. 1976) ("capital classification" jurisprudence involving additional procedural safeguards for capital trials), arguing that "[a]lthough La. R.S. 14:42(D)(2) has been declared unconstitutional by the United States Supreme Court, it is still law in Louisiana—even if it is unenforceable."[46]   The state courts summarily rejected his claim for relief at all levels of post-conviction review.   The State contends that Eley is not entitled to

---

[44]   Rec. Doc. 3-1, p. 53.

[45]   *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).

[46]   Rec. Doc. 3-1, p. 54.

relief because (1) his purely state law claim is not cognizable on federal habeas review and (2) he cites no clearly established United States Supreme Court law for his proposition that would entitle him to relief under the AEDPA.[47]

We rejected a similar argument regarding the purported "capital nature" of an aggravated rape offense and associated protections, which was made by petitioner in *Roca v. Cain*, Civ. Action 06-3424, 2008 WL 5611801 (E.D. La. Dec. 16, 2008), *adopted* 2009 WL 331364 (E.D. La. Feb. 9, 2009).   Roca argued that under Louisiana law the offenses of aggravated rape, aggravated oral sexual battery, and molestation of a juvenile could not be tried by the same mode of trial, and that the capital offense of aggravated rape required a unanimous verdict and other protections afforded to capital offenses.   He made the claim in the context of ineffective assistance of counsel, citing counsel's failure to challenge the indictment.   The Magistrate Judge rejected Roca's argument that state law "required that his counsel move to sever the 'capital' aggravated rape charge from other counts to protect the procedural rights fundamental to a capital case."   *Roca*, 2008 WL 5611801 at *15. The Court concluded that Louisiana courts plainly limited the protections to capital cases where defendants risked actual exposure to the death penalty, and not merely where a defendant is prosecuted under a statute with a constitutionally unenforceable death penalty provision.   *Id.* at *15 (citing *State v. Schrader*, 518 So.2d 1024 (La. 1988)); *see also State v. Serigne*, 2016-1034 (La. 12/6/17), 232 So.3d 1227, 1231; *State v. Kurz*, 51,781 (La. App. 2d Cir. 2/28/18), 245 So.3d 1219, 1228-29, *writs denied* 262 So.3d 285 (La. 2019) and 267 So.3d 598 (La. 2019), *cert denied* 139 S.Ct. 1105 (2021).   Thus, in denying Roca's claim that

---

[47] Rec. Doc. 11, p. 23.

counsel should have challenged the indictment, the Court reasoned:

> Such is the case for Roca. Although aggravated rape was a capital offense for less than nine months of the six years encompassed in the indictment, Roca never actually faced the death penalty. As noted above, in 1977, years before his indictment, the penalty for aggravated rape was amended by the Louisiana legislature to life imprisonment after the United States Supreme Court found the death penalty for that crime to be unconstitutional.
>
> Considering the foregoing progression of Louisiana law following *Rich*, Roca's counsel had no basis to challenge the indictment on the grounds that the aggravated rape charge enjoyed capital procedural protections and should not have been joined with other non-capital offenses. The crime had long-since been re-characterized as non-capital and Roca never faced the death penalty. Roca no longer was entitled to the interim protections discussed under *Rich* and its progeny. There was no legal basis for counsel to argue that he was.

*Roca*, 2008 WL 5611801 at *16 (footnote omitted).

Eley cites no state law, or more importantly, controlling federal law, that would have entitled him to a unanimous jury verdict in this non-capital case.[48]    He has not shown that the state courts' denial of relief was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Eley's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

---

[48]  The jury was polled, and the record reflects that the jury verdict was 10-2. State Rec., Vol. 3 of 8, Trial Transcript (September 10, 2015), pp. 767-68.    As the State correctly notes (Rec. Doc. 11, p. 5 n. *), Eley has not raised a claim under *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020), in this Court or in the state courts.    His entitlement to a remedy, if any, lies with the state courts.    *Edwards v. Vannoy*, 141 S.Ct. 1547 (2021) (holding that its decision in *Ramos v. Louisiana*, requiring that under the Sixth Amendment right to jury trial a state-court jury must be unanimous to convict a criminal defendant of a serious offense, does not apply retroactively on federal collateral review).

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[49]

New Orleans, Louisiana, this ___4th___ day of _____August_____, 2021.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.