UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES RICHARD ELEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2232** |
| **DARRYL VANNOY, WARDEN** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court are Petitioner James Richard Eley's ("Petitioner") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to this case.[2] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[3] The Magistrate Judge recommended that the petition be dismissed with prejudice.[4] Petitioner objects to the Magistrate Judge's Report and Recommendation.[5] After reviewing the Magistrate Judge's Report and Recommendation, Petitioner's objections, the record, and the applicable law, the Court overrules Petitioner's objections, adopts the Magistrate Judge's recommendation, and dismisses this action with prejudice.

---

[1] Rec. Doc. 14.

[2] Rec. Doc. 13.

[3] Rec. Doc. 3.

[4] Rec. Doc. 13.

[5] Rec. Doc. 14.

1

### I. Background

*A.    Factual Background*

In July 2012, Petitioner was charged by a grand jury in the Twenty-Second Judicial District Court for the Parish of St. Tammany with the aggravated rape of a four-year-old, B.H.[6] On September 10, 2015, Petitioner was found guilty as charged by a non-unanimous jury.[7] On September 28, 2015, Petitioner was sentenced to a term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[8] On September 16, 2016, the Louisiana First Circuit Court of Appeal affirmed Petitioner's conviction and sentence.[9] The Louisiana Supreme Court denied Petitioner's related writ application on September 6, 2017.[10]

On or about October 22, 2018, Petitioner submitted an application for post-conviction relief to the state trial court,[11] which was denied on February 26, 2019.[12] Petitioner's related writ applications were denied by the Louisiana First Circuit Court of Appeal on July 17, 2019,[13] and by the Louisiana Supreme Court on July 24, 2020.[14]

Petitioner filed the instant federal application for habeas corpus relief in this Court on August 10, 2020.[15] Petitioner raises five grounds for relief: (1) the evidence presented by the state

---

[6] State Rec., Vol. I of VIII, Indictment.

[7] State Rec., Vol. I of VIII, Trial Minutes, Sept. 10, 2015.

[8] State Rec., Vol. I of VIII, Sentencing Minutes, Sept. 28, 2015.

[9] *State v. Eley*, 2015-KA-1925 (La. App. 1 Cir. 9/16/16); 203 So. 3d 462.

[10] *State v. Eley*, 2016-KO-1844 (La. 9/6/17); 224 So. 3d 982.

[11] State Rec., Vol. VI of VIII, Application for Post-Conviction Relief, Oct. 22, 2018.

[12] State Rec., Vol. VI of VIII, Judgment and Reasons for Judgment, Feb. 26, 2019.

[13] *State v. Eley*, 2019-KW-541 (La. App. 1 Cir. 7/17/2019); 2019 WL 3235988.

[14] *State v. Eley*, 2019-KH-1512 (La. 7/24/2020); 299 So. 3d 63.

[15] Rec. Docs. 1, 3.

was insufficient to convict him of aggravated rape; (2) the trial court erred in admitting a video recording of an interview with the victim conducted by the Children's Advocacy Center ("CAC"); (3) the State withheld exculpatory evidence in violation of *Brady v. Maryland*; (4) the trial court erred in not including several responsive verdicts for the jury's consideration; and (5) the non-unanimous jury verdict was unconstitutional.[16] The State filed a response conceding that the application was timely, but arguing that Petitioner's claims are without merit.[17] Petitioner filed a reply to the State's response.[18]

## B.     *Report and Recommendation Findings*

The Magistrate Judge recommends that the petition be dismissed with prejudice.[19] First, the Magistrate Judge found Petitioner's sufficiency of the evidence claim to be meritless.[20] The Magistrate Judge found that the jury made "entirely reasonable inferences" about the evidence, and noted that Petitioner's arguments concerning witness credibility do not warrant relief.[21] Thus, the Magistrate Judge found that the evidence presented was sufficient for the jury to reasonably find Petitioner guilty of aggravated rape.[22]

Second, the Magistrate Judge considered Petitioner's claim regarding the admission of the CAC video.[23] To the extent Petitioner argued that the state trial court improperly admitted the

---

[16] Rec. Doc. 3.

[17] Rec. Doc. 11.

[18] Rec. Doc. 12.

[19] Rec. Doc. 13.

[20] *Id.* at 7–13.

[21] *Id.* at 12.

[22] *Id.* at 13.

[23] *Id.* 13–27.

CAC video into evidence under state law, the Magistrate Judge found that such a claim is not cognizable on federal habeas review.[24] To the extent Petitioner argued that the admission of the video violated his rights under the Confrontation Clause, the Magistrate Judge found this argument without merit.[25] Although the victim testified that he did not remember the incident, the Magistrate Judge pointed out that the victim did testify at trial and was subject to cross examination.[26] The Magistrate Judge concluded that there was no clearly established law to support the position that the admission of the video violated Petitioner's right to confront the victim where the victim testified that he had no memory of the incident.[27]

Third, the Magistrate Judge considered Petitioner's claim that the State violated *Brady* by failing to disclose to the defense before trial that the victim had no memory of the events.[28] The Magistrate Judge found that a victim's failing memory years after an event arguably falls within the category of neutral, rather than exculpatory, evidence and thus any purported nondisclosure did not violate *Brady*.[29] Additionally, the Magistrate Judge pointed out that the defense was made aware of this issue during the prosecutor's opening statement, and the defense had ample opportunity to question the victim regarding his memory loss at trial.[30] Since the information was

---

[24] *Id.* at 20.

[25] *Id.*

[26] *Id.* at 22–23.

[27] *Id.* at 25.

[28] *Id.* at 27–34.

[29] *Id.* at 32.

[30] *Id.* at 32–33.

fully available to the defense at trial, the Magistrate Judge concluded that no *Brady* violation occurred.[31]

Fourth, the Magistrate Judge considered Petitioner's argument that the trial court failed to include responsive verdicts for forcible rape, simple rape, and related attempt crimes in the jury instructions and verdict form.[32] The Magistrate Judge noted that this issue is a question of state law, and federal habeas courts do not review errors of state law.[33] To the extent that Petitioner argued that the alleged error violated due process, the Magistrate Judge found that Petitioner "failed to establish any error by the state trial court which rendered the state court proceedings fundamentally unfair."[34]

Finally, the Magistrate Judge considered and rejected Petitioner's argument regarding the non-unanimous verdict.[35] Since aggravated rape of a juvenile was not a capital offense, as Petitioner incorrectly suggested, the Magistrate Judge concluded that Petitioner was not entitled to the heightened procedural protections afforded to capital offenses under Louisiana law.[36] Additionally, the Magistrate Judge pointed out that Petitioner did not raise a claim under the Supreme Court's decision in *Ramos v. Louisiana*, but regardless *Ramos* does not apply retroactively to cases on collateral review.[37]

---

[31] *Id.* at 33–34.

[32] *Id.* at 34–40.

[33] *Id.* at 38.

[34] *Id.*

[35] *Id.* at 40–42.

[36] *Id.* at 41–42.

[37] *Id.* at 42, n.48 (citing *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020); *Edwards v. Vannoy*, 141 S.Ct. 1547 (2021)).

## II. Objections

*A.     Petitioner's Objections*

Petitioner objects to the Report and Recommendations in its entirety.[38] First, Petitioner asserts that the evidence was insufficient to support the jury's verdict.[39] Petitioner contends that the State was required to "negate any reasonable probability of misidentification," because a key issue at trial was Petitioner's identity as the perpetrator.[40] Additionally, Petitioner argues that DNA testing wholly excluded Petitioner "as a possible donor of any of the DNA evidence left behind."[41] Petitioner asserts that the victim testimony that "nothing happened" renders the jury's verdict irrational.[42]

Second, Petitioner argues that the Magistrate Judge erred in concluding that Petitioner's Sixth Amendment right of confrontation was not violated when the trial court allowed the prosecution to introduce into evidence the CAC video.[43] Because the victim "could not defend or explain his out of court statement," Petitioner asserts that the victim thus was unavailable as a witness.[44]

Third, Petitioner contends that the Magistrate Judge erred in concluding that the State did not violate *Brady*.[45] Petitioner asserts that the Magistrate Judge incorrectly concluded that the

---

[38] Rec. Doc. 14.

[39] *Id.* at 1–4.

[40] *Id.* at 2.

[41] *Id.*

[42] *Id.* at 4.

[43] *Id.* at 5–6.

[44] *Id.* at 5.

[45] *Id.* at 6–7.

victim's inability to recall the events in question constituted neutral evidence that was not exculpatory in nature.[46]

Fourth, Petitioner asserts that he was deprived due process because the jury was erroneously instructed by the trial court.[47] Petitioner states that the Magistrate Judge's analysis was incorrect, but Petitioner does not offer any additional argument on this issue.[48]

Finally, Petitioner asserts that he was entitled to a unanimous jury verdict because the charge was capital in nature.[49] Petitioner argues that the sentence of life imprisonment ordered by the trial court is equivalent to the death penalty.[50] Petitioner argues that the Sixth Amendment requires juror unanimity.[51]

### B. State's Opposition

The State of Louisiana did not file a brief in opposition to the Petitioner's objections despite receiving notice of the filing.

## III. Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. The District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[52] The District Judge must

---

[46] *Id.*

[47] *Id.* at 7.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

7

"determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[53] The District Court's review is limited to plain error for parts of the report which are not properly objected to.[54]

### B. Standard of Review Under the AEDPA

Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[55] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56] A state court's determinations on mixed questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[57]

Regarding this standard, the United States Court of Appeals for the Fifth Circuit has explained:

> A state-court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct

---

[53] Fed. R. Civ. P. 72(b)(3).

[54] *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[55] *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403–404 (2000)).

[56] 28 U.S.C. § 2254(d)(2).

[57] *Id.* § 2254(d)(1).

governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[58]

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[59] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[60]

## IV. Law and Analysis

### A.   *Sufficiency of the Evidence Claim*

Petitioner objects to the Magistrate Judge's determination that Petitioner is not entitled to relief on his sufficiency of the evidence claim.[61] Petitioner asserts that the State failed to prove his identity as the perpetrator.[62] Therefore, Petitioner claims that no reasonable juror could have found him guilty of aggravated rape.[63]

In *Jackson v. Virginia*, the Supreme Court held that an "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[64] As the Supreme Court explained:

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable

---

[58] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (citations and quotation marks omitted).

[59] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[60] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (quotation marks omitted).

[61] Rec. Doc. 14 at 1.

[62] *Id*. at 2.

[63] *Id*. at 4.

[64] 443 U.S. 307, 324 (1979).

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[65]

It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[66] Thus, "[t]he jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."[67] The Supreme Court has recognized that "the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review."[68]

At the time of the offense, Louisiana Revised Statute § 14:42 defined aggravated rape as a rape committed "where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because . . . the victim is under the age of thirteen years." Petitioner does not debate whether the elements of aggravated rape were satisfied, but he argues that the State failed to prove his identity as the perpetrator.

Petitioner's identity as the perpetrator was primarily established through the testimony of B.H.'s mother, the testimony of Christopher Burns and the CAC video interview with B.H. On the evening of April 20, 2012, four-and-one-half-year-old B.H. and his mother were having a fish-fry in their backyard on Alice Street.[69] Christopher Burns, a family friend who lived next door, was also there.[70] Petitioner stopped by the house but then left.[71] Burns had hired Petitioner to do

---

[65] *Id.* at 318–19 (emphasis in original) (quotation marks and citations omitted).

[66] *Id.* at 319.

[67] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks and citations omitted).

[68] *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[69] *Eley*, 203 So. 3d at 466.

[70] *Id.*

[71] *Id.*

renovation work at Burns' house.[72] At some point during the evening, B.H.'s mother and Burns noticed that B.H. was not in the backyard.[73] They walked to the street and began yelling out B.H.'s name.[74] B.H.'s mother and Burns then saw Petitioner and B.H. walk out the front door of Burns' house.[75]

After returning home, B.H.'s mother asked B.H. what happened, and B.H. told his mother that they were in the bathroom, and Petitioner pushed, slapped, and kissed B.H.'s penis.[76] Several days later, B.H. was taken to the CAC in Covington, where he disclosed in an interview the same information he had revealed to his mother.[77] In the interview, B.H. stated that he did not know the perpetrator's name, but B.H. referred to him as "Chris's friend."[78] At trial, about three and a half years after the incident, B.H. testified that he did not remember being interviewed.[79] He also testified he did not remember living on Alice Street and that nothing happened to him when he was four years old.[80]

Petitioner argues that the evidence was insufficient because Chris Burns testified that Petitioner was not his "friend."[81] Petitioner asserts that this "friend" was actually another man who was also renovating Burns' house. This argument is unpersuasive. The testimony of B.H.'s mother

---

[72] *Id.*

[73] *Id.* at 467.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] State Rec., Vol. II of VIII, Trial Transcript at 445–46, 463, Sept. 9, 2015.

11

and Burns both established that they saw Petitioner exiting Burns' house with B.H.[82] Additionally, Petitioner's interview with Detective Scott Davis was admitted into evidence at trial, wherein Petitioner stated that he was in the bathroom with B.H.[83] During the interview, Petitioner also acknowledged that his hand might have touched B.H.'s penis and his saliva might be present since he spit in the toilet.[84]

Petitioner also argues that the DNA evidence exonerated him. The Scientific Analysis Report indicates that the DNA profile obtained from the inside portion of the victim's shorts and outer flap of underwear were consistent with being a mixture of DNA from at least two individuals.[85] The report states that the victim could not be excluded as the donor, but Petitioner was "excluded as a donor."[86] DNA analyst Tara Johnson testified that this result meant that if Petitioner's "DNA was there, it was not in the high enough amount that we could detect it on our instruments."[87] Ms. Johnson also stated that in her expertise it was "very probable" that the individual who contributed the DNA mixture was a biological parent,[88] *i.e.* touch DNA from the victim's mother while she was folding his clothes. Therefore, although Petitioner's DNA was not found, the evidence did not "exonerate" Petitioner.

Petitioner has not shown that the inferences made by the jury were unreasonable. Although the victim was unable to recall the events at the time of trial, the testimony of B.H.'s mother, Chris

---

[82] State Rec., Vol. II of VIII, Trial Transcript at 450–52, 474–77, Sept. 9, 2015.

[83] State Rec., Vol. III of VIII, Trial Transcript at 554–55, Sept. 9, 2015.

[84] *Id.*

[85] Rec. Doc. 11-1 at 2–3.

[86] *Id.*

[87] State Rec., Vol III of VIII, Trial Transcript (September 9, 2015), p. 520 (Tara Johnson).

[88] *Id.* at 523–25.

Burns, and the testimony and video of B.H's statements around the time of the rape, all support the jury's verdict. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, the jury verdict was not irrational, and Petitioner has not demonstrated that he is entitled to relief on this issue.

### B.  *Confrontation Clause Claim*

Petitioner claims that the state trial court erred in admitting the CAC video. To the extent Petitioner argued that the state trial court improperly admitted the CAC video into evidence under state law, the Magistrate Judge found that such a claim is not cognizable on federal habeas review.[89] Petitioner does not raise a specific objection to this finding. Federal habeas review is limited to errors of constitutional dimension,[90] and a federal habeas court "must defer to a state court's authoritative construction of state law."[91] Therefore, any argument that the evidentiary ruling violated state law is not cognizable on federal habeas review.

Petitioner also argues that the admission of the video violated his rights under the Confrontation Clause. Petitioner argues that the Magistrate Judge erred in concluding that Petitioner's Sixth Amendment right of confrontation was not violated when the trial court allowed the prosecution to introduce into evidence the CAC video.[92] Since the victim "could not defend or explain his out of court statement," Petitioner asserts that the victim thus was unavailable as a witness.[93]

---

[89] Rec. Doc. 13 at 20.

[90] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

[91] *Gonzales v. Thaler*, 643 F.3d 425, 428, n.3 (5th Cir. 2011).

[92] Rec. Doc. 14 at 5–6.

[93] *Id.* at 5.

The Confrontation Clause affords criminal defendants the right "to be confronted with the witnesses against him."[94] In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination."[95] In *United States v. Owens*, a case predating *Crawford*, the Supreme Court held that the introduction of a victim's out-of-court identification of defendant as his assailant, even though the victim admitted at trial that he could not remember seeing his assailant.[96] The Court emphasized that "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"[97] The Supreme Court has not reconsidered this holding following *Crawford*.

In *Yanez v. Minnesota*, the Eighth Circuit noted that "[a]t a minimum, whether there may ever be an instance in which memory loss can inhibit cross-examination to such a degree as to violate the Constitution is still an 'open question.'"[98] Therefore, the appellate court concluded that such an argument is not "'clearly established' for habeas purposes."[99] Although *Yanez* is not binding on this Court, its reasoning is persuasive. Petitioner has not identified any clearly established federal law to support his argument that the admission of the CAC interview with the victim violated the Confrontation Clause since the victim testified at trial and was subject to cross-examination. Accordingly, Petitioner has not demonstrated that he is entitled to relief on this issue.

---

[94] U.S. Const. amend. VI.

[95] *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

[96] *United States v. Owens*, 484 U.S. 554 (1988).

[97] *Id.* at 559 (internal citations omitted).

[98] *Yanez v. Minnesota*, 562 F.3d 958, 964 (8th Cir. 2009).

[99] *Id.*

C.     *Brady* **Claim**

Petitioner contends that the Magistrate Judge erred in concluding that the State did not violate *Brady* by failing to disclose before trial that the victim could not remember the incident.[100] Petitioner asserts that the Magistrate Judge incorrectly concluded that the victim's inability to recall the events in question constituted neutral evidence that was not exculpatory in nature.[101]

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused [] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[102] The prosecutor's duty to provide favorable evidence includes impeachment evidence and exculpatory evidence.[103] The prosecutor's duty to disclose evidence includes both evidence in its own possession and any other "favorable evidence known to the others acting on the government's behalf in the case, including the police."[104] "[T]he duty to disclose such evidence is applicable even though there has been no request by the accused."[105]

To prevail on a *Brady* claim, Petitioner must show: (1) the prosecutor suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material to guilt or punishment.[106] "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A

---

[100] Rec. Doc. 14 at 6–7.

[101] *Id.*

[102] 373 U.S. 83, 87 (1963).

[103] *United States v. Bagley*, 473 U.S. 667, 676 (1985).

[104] *Kyles*, 514 U.S. at 437.

[105] *Strickler v. Greene*, 527 U.S. 263, 279 (1999).

[106] *Brady*, 405 U.S. at 154.

'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[107] The materiality analysis "is not a sufficiency of evidence test."[108] "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence,' or whether, 'after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.'"[109] To succeed on a *Brady* claim, a defendant must "show[] that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[110] "A *Brady* violation is more likely to occur when the impeaching evidence 'would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration.'"[111]

The Fifth Circuit has recognized that a witness's inability to remember the events is neutral, rather than exculpatory, and therefore is not *Brady* material.[112] Additionally, this information was known to the defense at the start of trial. During opening statements, the prosecutor discussed the victim's failing memory during opening statements. "[W]hen information is fully available to a defendant at the time of trial . . . the defendant has no *Brady* claim."[113] The defense had ample opportunity to question B.H. about his failing memory on cross-examination. Therefore, the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, clearly established federal law.

---

[107] *Bagley*, 473 U.S. at 682.

[108] *Kyles*, 514 U.S. at 434.

[109] *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (quoting *Kyles*, 514 U.S. at 434–35).

[110] *Kyles*, 514 U.S. at 435.

[111] *LaCaze v. Warden Louisiana Corr. Inst. for Women*, 645 F.3d 728, 736 (5th Cir. 2011) (quoting *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010)).

[112] *United States v. Dillman*, 15 F.3d 384, 390 (5th Cir. 1994).

[113] *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980).

### D. *Jury Instruction Claim*

Petitioner asserts that he was deprived due process because the jury was erroneously instructed by the trial court.[114] The Magistrate Judge noted that this issue is a question of state law, and federal habeas courts do not review errors of state law.[115] To the extent that Petitioner argued that the alleged error violated due process, the Magistrate Judge found that Petitioner "failed to establish any error by the state trial court which rendered the state court proceedings fundamentally unfair."[116] Petitioner states that the Magistrate Judge's analysis was incorrect, but Petitioner does not offer any additional argument on this issue.[117]

As noted by the Magistrate Judge, the issue of whether an offense should be included as a lesser included offense for jury instruction purposes is generally a question of state law. Additionally, Petitioner has failed to establish any error by the state trial court which rendered the state court proceeding fundamentally unfair. Therefore, the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, clearly established federal law.

### E. *Non-Unanimous Jury Verdict Claim*

Finally, Petitioner asserts that he was entitled to a unanimous jury verdict because the charge was capital in nature.[118] Petitioner argues that the Sixth Amendment requires juror unanimity.[119]

---

[114] Rec. Doc. 14 at 7.

[115] Rec. Doc. 13 at 38.

[116] *Id.*

[117] Rec. Doc. 14 at 7.

[118] Rec. Doc. 14 at 7.

[119] *Id.*

17

Article I, Section 17 of the Louisiana Constitution provides that "[a] criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict."[120] Similarly, Louisiana Code of Criminal Procedure article 782 provides "[a] criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict."[121] Therefore, Louisiana law required juror unanimity for a verdict to be reached in capital cases. However, in non-capital offenses committed before January 1, 2019, Louisiana law allowed a verdict to be reached with the concurrence of only ten jurors. Petitioner was convicted by a 10-2 verdict on September 10, 2015.

Petitioner argues that state law required the verdict to be unanimous because aggravated rape was a capital offense. This argument is unavailing. Petitioner was not charged with a capital offense, nor did he face the possibility of the death penalty.[122] Therefore, Louisiana law did not require that the verdict be unanimous at the time of his conviction.

In 2020, the Supreme Court decided *Ramos v. Louisiana*, holding that "the Sixth Amendment right to a jury trial—as incorporated against the States by way of the Fourteenth

---

[120] La. Const. article I, § 17(A).

[121] La. Code Crim. Proc. art. 782(A).

[122] *See Roca v. Cain*, No. 06-3424, 2008 WL 5611801 (E.D. La. Dec. 16, 2008), *adopted* 2009 WL 331364 (E.D. La. Feb. 9, 2009).

Amendment—requires a unanimous verdict to convict a defendant of a serious offense."[123] The Supreme Court recently held that *Ramos* does not apply retroactively on federal collateral review.[124] Petitioner did not raise a claim under *Ramos* in state court. Therefore, any claim under *Ramos* lies in state court.[125] Accordingly, Petitioner has not demonstrated that he is entitled to relief on this issue.

## V. Conclusion

For the reasons stated above, Petitioner has not shown that the state court's denial of relief was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner James Richard Eley's petition for issuance for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and the petition is **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  29th  day of October, 2022.

                                                              *Nannette Jolivette Brown*
                                                           **NANNETTE JOLIVETTE BROWN**
                                                           **CHIEF JUDGE**
                                                           **UNITED STATES DISTRICT COURT**

---

[123] *Ramos v. Louisiana*, 140 S.Ct. 1390, 1394 (2020).

[124] *Edwards v. Vannoy*, 141 S.Ct. 1547 (2021).

[125] *State v. Waldron*, 2021-0512 (La. App. 4 Cir. 1/24/22), 334 So. 3d 844, 847 ("Since the *Edwards* ruling, Louisiana courts have split on the retroactive application of Ramos in state post-conviction proceedings. However, the Louisiana Supreme Court has not issued an opinion directly addressing the retroactivity of *Ramos* in Louisiana post-conviction proceedings.").